IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-20004 |
| | ) | |
| ROSS THACKER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
AMENDED MOTION FOR COMPASSIONATE RELEASE**

The United States of America, by its attorneys John C. Milhiser,

United States Attorney, and Timothy A. Bass, Assistant United States

Attorney, respectfully submits its response in opposition to the defendant's

amended motion for compassionate release:

## I.    Background

On April 4, 2003, the defendant, Ross Thacker, was charged in a

superseding indictment with two counts of interference with commerce by

robbery, in violation of 18 U.S.C. § 1951 (Counts 1 and 5), and two counts of

carrying a firearm during and in relation to a crime of violence, in violation of

18 U.S.C. § 924(c) (Counts 2 and 6). (R.10) The charges resulted from the

defendant and his co-defendant, Semaji Warrant, committing several armed

robberies in Champaign County, Illinois. *Untied States v. Thacker*, 2006 WL

2006 WL 3374174, at *1 (7th Cir. Nov. 11, 2006). "On one occasion, one of the defendants pistol-whipped an employee." *Id.* Following two separate trials in 2004, the defendant was convicted of all counts charged in the superseding indictment. (d/e 4/22/04;R.133; d/e 5/6/04;R.153)

At sentencing, the defendant faced a final offense level of 24, a criminal history category of V, a resulting sentencing range of  92 to 115 months of imprisonment, and mandatory consecutive sentences of 7 and 25 years of imprisonment, respectively, for the section 924(c) offenses. (PSR ¶¶54, 82-83) Despite being only 22 years of age, the defendant had 10 criminal history points resulting from prior convictions for residential burglary, burglary, and armed robbery. (PSR ¶¶50-52) He committed the charged federal offenses while on state parole and within two years of release from state imprisonment. (PSR ¶53) The Court sentenced the defendant to a total of 400 months (33 years, 4 months) of imprisonment. (d/e 3/9/05;R.187) This term consisted of 16 months of imprisonment on Counts 1 and 5, to run concurrently, a consecutive term of 300 months of imprisonment on Count 2, and a consecutive term of 84 months of imprisonment on Count 6. (d/e 3/9/05;R.187)

## II.   The Defendant's Expected Release Date and Medical Status

According to the Bureau of Prisons (BOP), the defendant is serving his sentence at FCI - Gilmer, which has a population of 1,287.

- 2 -

https://www.bop.gov/locations/institutions/gil/. His current expected release date is December 5, 2033. According to BOP, the defendant has received four disciplinary infractions for assaulting without serious injury, three disciplinary infractions for being insolent to a staff member, and two disciplinary infractions for being absent from assignment and refusing to obey an order. In addition, he has received disciplinary infractions for possessing drugs or alcohol, fighting with another person, phone abuse, refusing to take alcohol test, and possessing intoxicants. BOP has assessed the defendant at a high risk recidivism level.

According further to BOP, there are 2 inmates at FCI – Gilmer with confirmed cases of COVID-19, with 5 inmates and 2 staff members who have recovered.

According to his BOP medical records, the defendant is 44 years old and his medical conditions include hypertension, unspecified essential, acute periodontitis, Type 2 diabetes mellitus, hyperlipidemia, unspecified and unspecified hemorrhoids. He is receiving treatment for his health issues, and his condition is considered stable. According to his most recent medical records of April 2020, the defendant appears well, alert, and oriented.

 According to the probation office's compassionate release report, the defendant's proposed release plan of residing with his wife is not suitable. The probation office explains that the defendant's relationship with his wife

has only taken place in a controlled institutional environment, and the couple have never resided together outside of this environment as adults. In addition, the probation office advises that the Eastern District of Wisconsin would need to investigate the release plan and advise whether it would accept supervision of the defendant.

## III.    Defendant's Motion for Compassionate Release

In his amended motion for compassionate release, the defendant alleges that he has exhausted his administrative remedies with BOP, he currently suffers from health conditions (apparently type II-diabetes and hypertension) that create a higher risk of severe illness from COVID-19, and the consecutive sentence structure of 18 U.S.C. 924(c) has been amended such that if he were prosecuted today, he would only receive consecutive sentences of 7 and 7 years of imprisonment rather than 7 and 25 years of imprisonment.

## IV.    Argument

### A. The Defendant's Motion Should Be Denied on the Merits

The compassionate release statute provides, in pertinent part:

The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C. § 3582(c)(1)(A).

In this case, it appears that the defendant has satisfied the statutory exhaustion requirement. In addition, the government concedes that the defendant's medical records reflect that he suffers from type-II diabetes, which, according to the CDC, results in an "**increased risk** of severe illness from COVID-19," and hypertension, where the defendant "**might be at an increased risk** for severe illness from COVID-19."

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The defendant's motion, however, fails on the merits.

First, although the defendant suffers from a health condition -- type II-diabetes -- that results in an increased risk of severe illness from COVID-19 and therefore presents a compelling and extraordinary reason to consider his motion, this condition and his other health issues are being treated with

medication, and his overall condition is considered stable. Accordingly, the defendant does not appear to be suffering from "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

Second, the current COVID-19 epidemic, although undoubtedly extreme and serious, is not by itself an "extraordinary and compelling reason" to grant a motion for compassionate release. As Judge Shadid has held, "the mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Cabrera*, 2020 WL 2549941, at * 4 (C.D. Ill. May 19, 2020); *see also United States v. Hamlin*, 2020 WL 1703848, at *5 (E.D. Wis. Apr. 8, 2020) ("Several courts have noted that the existence of the COVID-19 crisis alone is not sufficient to justify release if traditional factors warrant detention."). The defendant has not established that FCI-Gilmer, which currently has 2 inmates with confirmed cases of COVID-19 and 5 inmates and 2 staff members who have recovered, is facing a serious outbreak of COVID-19 infections or is unable to successfully contain any outbreak.

Third, and most importantly, a reduction in the defendant's sentence is plainly inconsistent with 18 U.S.C. § 3553(a)(1)(D), namely, "to protect the

public from further crimes of the defendant[.]" His criminal history, as detailed above and including conduct involved in the federal offenses in this case, is extensive and violent and resulted in a criminal history category of V at the age of 22. In addition, he has multiple and significant disciplinary incidents within BOP, including assault without serious injury, and is assessed at a high risk recidivism level. This significant criminal history and conduct within BOP strongly suggest, if not conclusively demonstrate, that the defendant is a continuing danger to the community if released. He should not be released back into the community any sooner than necessary.

### B. The Amendment of 18 U.S.C. 924(c) is Not a Basis to Grant the Defendant Compassionate Release

The defendant further argues that his motion for compassionate release should be granted based on the length of the mandatory consecutive sentences he received (7 and 25 years) for violations of 18 U.S.C. § 924(c) in relation to the lower terms (7 and 7 years) that would be applied under current law. The government respectfully submits that this Court lacks authority to grant compassionate relief on that basis.

### 1. The Pertinent Statute Directs that "Extraordinary and Compelling Circumstances" Allowing Compassionate Release Are Defined by the Sentencing Commission.

The defendant, in effect, is seeking retroactive application of Section 403 of the First Step Act of 2018, which reduced the penalty for multiple

924(c) violations committed by an offender who had not previously incurred a 924(c) conviction. However, the determination of the retroactivity of a statutory provision is made by Congress. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). In the ordinary course, it is presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id.* at 272. The controlling statute, 1 U.S.C. § 109, provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

With respect to the change to Section 924(c) adopted in the First Step Act, Congress stated its intent explicitly, providing in Section 403(b): "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." First Step Act § 403(b). Given that the defendant was sentenced before December 21, 2018, Section 403 does not apply in this case, and the defendant's sentence remains intact. Every court to address this issue agrees. *See, e.g.*, *United States v. Cruz-Rivera*, 954 F.3d 410 (1st Cir. 2020); *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020) (holding that § 403 of the Act does not apply

retroactively in a case in which a sentence was imposed before the Act was passed, even if another non-924(c) part of the sentence was modified after the passage of the Act); *United States v. Jordan*, 952 F.3d 160, 171-74 (4th Cir. 2020); *United States v. Richardson*, 948 F.3d 733, 745-53 (6th Cir. 2020) (on remand from the Supreme Court for consideration of the application of the First Step Act, the court holds that Section 403 does not apply retroactively to a 924(c) sentence imposed before the Act was passed, even if a direct appeal remains pending); *United States v. Hamilton*, -- F. App'x --, 2020 WL 362943, at *2 (9th Cir. Jan. 22, 2020) (not precedential); *United States v. Hunt,* 793 F. App'x 764 (10th Cir. 2019) (not precedential); *Willingham v. United States*, -- F. App'x --, 2020 WL 1053098 (11th Cir. Mar. 4, 2020) (denying motion to file successive 2255 petition); *United States v. Buckner*, -- F. App'x --, 2020 WL 1527727, at *6 n.12 (11th Cir. Mar. 31, 2020) (not precedential).

Thus, Congress expressly declined to extend the benefit of the amended Section 924(c) to defendants like the defendant. Nevertheless, the defendant seeks a different result, claiming that the compassionate release authority of Section 3582(c)(1)(A)(i) authorizes what Section 403 of the First Step Act did not. As recently amended by the First Step Act, Section 3582(c)(1)(A)(i) provides:

(c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that--

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

In Section 603(b) of the First Step Act, Congress added the italicized passage that permits a defendant, after denial of a request to BOP that it sponsor a request for compassionate release, or the passage of a specified period of time after seeking BOP's acquiescence, to himself move the court for relief. Previously, only BOP could initiate a motion for compassionate release.

The defendant argues that the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have vested this Court with authority to identify the extraordinary and compelling circumstances that may warrant a sentence reduction. But that is not true. The First Step Act left unchanged a

critical statutory command: any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Here, the applicable policy statement provides no basis for a sentence reduction based on concern regarding the length of a previously imposed sentence.

As before, Congress has directed the Sentencing Commission to determine the permissible grounds for compassionate release. That directive is expressed in several statutes. Congress directed the Sentencing Commission to adopt policy statements regarding "the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Providing further guidance, Section 994(t) states: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." And finally, as stated, Section 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at U.S.S.G. § 1B1.13.

The defendant suggests that the resulting guideline is only advisory, but that is not true of this guideline. This policy statement is binding under the express terms of Section 3582(c)(1)(A), and because it concerns only

possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory.

This issue was resolved by the Supreme Court in *Dillon v. United States*, 560 U.S. 817 (2010), which the defendant does not address, but makes clear that the statutory requirement in Section 3582 that a court heed the restrictions stated by the Sentencing Commission is binding. *Dillon* concerned a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2), which allows a sentence reduction in limited circumstances upon the Commission's adoption of a retroactive guideline amendment lowering a guideline range. That subsection allows such an action "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" – language identical to that which appears in Section 3582(c)(1)(A) with respect to a court's consideration of a motion for compassionate release ("if it finds . . . that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission").

The *Dillon* Court held that the Commission's pertinent policy statement concerning retroactive guideline amendments (U.S.S.G. § 1B1.10) is binding, particularly its directive that a permissible sentence reduction is limited to the bottom of the revised guideline range, without application of the rule of *Booker. See Dillon*, 560 U.S. at 826. *Dillon* emphasized that a

- 12 -

sentence reduction under Section 3582(c)(2) is not a resentencing proceeding, but rather "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines," without any possibility of increase in a sentence. *Id.* at 828. The Court stressed the opening passage of 18 U.S.C. § 3582(c) – "The court may not modify a term of imprisonment once it has been imposed except that" – and the specific language of Section 3582(c)(2), which gives a court power to "reduce" a sentence, not increase it. For this and numerous other reasons – that the provision applies only to a limited class of prisoners, that Federal Rule of Criminal Procedure 43(b)(4) does not require the defendant's presence at any proceeding under Section 3582(c), and that Congress explicitly gave the Sentencing Commission a significant role in determining eligibility – *Dillon* held that the *Booker* rule is inapplicable and the Commission's relevant policy statement is controlling.

Every consideration identified in *Dillon* appears here. A motion for compassionate release rests on an act of Congressional lenity. It appears under the same prefatory language of Section 3582(c) ("The court may not modify a term of imprisonment once it has been imposed except that"), and explicitly refers to an action to "reduce" a sentence. It applies only to a limited class of prisoners, and does not warrant a full resentencing procedure. There is no basis for any conclusion other than that the statutory language is

- 13 -

binding: a court may reduce a sentence based on "extraordinary and compelling reasons" only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Thus, the defendant's position, that Congress aimed to afford courts discretion to determine in individual cases whether there is a basis for a sentence reduction, simply ignores the text of the actual statutes, not to mention the *Dillon* decision.[1]

The defendant cites S. Rep No. 98-225 (1983), but it does not contradict the statutes (not that it could). This Senate report was issued in relation to the Comprehensive Crime Control Act of 1984, in which the compassionate release provision was adopted. At the time, Congress endeavored to abolish indeterminate sentencing and the related parole system, determining that fairness required consistent and predictable sentencing of like offenders. The report observed:

---

[1] While some defendants have raised the rule of lenity in this context, it is inapplicable. The rule of lenity applies only to "interpretations of the substantive ambit of criminal prohibitions, [and] to the penalties they impose." *Bifulco v. United States*, 447 U.S. 381, 387 (1990). Section 3582(c)(1)(A) authorizes only a reduction of a sentence; it neither prohibits conduct nor imposes penalties. And in any event, application of the rule of lenity "requires more than a difficult interpretative question. Rather, '[t]o invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute.'" *United States v. Flemming*, 617 F.3d 252, 270 (3d Cir. 2010) (citing *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998) (internal quotation marks and citation omitted)). The rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *Moskal v. United States*, 498 U.S. 103, 108 (1990). Here, the statutory provision is unambiguous.

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. The Committee believes, however, that it is unnecessary to continue the expensive and cumbersome Parole Commission to deal with the relatively small number of cases in which there may be justification for reducing a term of imprisonment. The bill, as reported, provides instead in proposed 18 U.S.C. 3583(c) for court determination, subject to consideration of Sentencing Commission standards, of the question whether there is justification for reducing a term of imprisonment in situations such as those described.

S. Rep. 98-225, at 55-56. The Committee later described "the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner. In such a case, under subsection (c)(1)(A), the Director of the Bureau of Prisons could petition the court for a reduction in the sentence, and the court could grant a reduction if it found that the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 121. These statements are fully consistent with the statutes as ultimately passed, which direct courts to grant compassionate release only as consistent with the policy statement of the Sentencing Commission.

In sum, in amending Section 3582(c)(1)(A), Congress granted inmates a new procedural right: the opportunity to bring motions for compassionate release directly. In so providing, Congress did not alter the substantive criteria governing motions for compassionate release, which remain subject to binding guidance of the Sentencing Commission.

### 2. The Governing Policy Statement Does Not Permit Relief Based on Disagreement with the Length of a Mandatory Sentence.

Based on the Congressional mandate, the Sentencing Commission set forth the policy statement in Section 1B1.13 governing motions for compassionate release. In defining the extraordinary circumstances that may warrant relief, the Commission focused on medical condition, age, and family responsibilities. Application note 1 states that "extraordinary and compelling reasons exist under any of the circumstances set forth below":

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Addressing subsection (D), BOP has issued a regulation defining its own consideration of requests for compassionate release. That regulation appears at Program Statement 5050.50, available at

https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This program statement was amended effective January 17, 2019, following passage of the First Step Act. It replaces the previous program statement, 5050.49, CN-1. It sets forth in detail BOP's definition of the circumstances that may support a

- 17 -

request for compassionate release, limited to the same bases identified by the Sentencing Commission: medical condition, age, and family circumstances.

Neither the policy statement nor the BOP regulation provides any basis for compassionate release based on reevaluation of the severity of the original sentence. In this case, the defendant does not set forth anything more. He asserts that he is rehabilitated (which by itself, under 28 U.S.C. § 994(t), may not be the basis for relief), and that the original mandatory minimum sentence was too extreme as revealed by the recent statutory amendment. This does not set forth an allowable basis for relief consistent with the Sentencing Commission's policy statement.

This is not surprising. The compassionate release statute is part of an intricate sentencing scheme. The 1984 sentencing reform of which this statute is part was animated by the Congressional determination "that sentencing in the Federal courts is characterized by unwarranted disparity and by uncertainty about the length of time offenders will serve in prison." S. Rep. 98-225, at 49. Thus, Congress created the Sentencing Commission to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the

establishment of general sentencing practices . . . ." 28 U.S.C. § 991(b)(1)(B).

*See also Peugh v. United States*, 569 U.S. 530, 535 (2013); *United States v.*

*Booker,* 543 U.S. 220, 264 (2005) (majority opinion of Breyer, J.); *Koon v.*

*United States*, 518 U.S. 81, 113 (1996) ("The goal of the Sentencing

Guidelines is, of course, to reduce unjustified disparities and so reach toward

the evenhandedness and neutrality that are the distinguishing marks of any

principled system of justice. In this respect, the Guidelines provide

uniformity, predictability, and a degree of detachment lacking in our earlier

system."). Justice Breyer, an architect of the sentencing reform effort,

explained:

> The Sentencing Reform Act (SRA) has two overall objectives. *See*
> *Barber v. Thomas*, 130 S.Ct. 2499, 2505 (2010); *see also* United
> States Sentencing Commission, Guidelines Manual § 1A3, p. 1.2
> (Nov.1987) (USSG) (addressing statutory objectives). First, it
> seeks greater honesty in sentencing. Instead of a parole
> commission and a judge trying to second-guess each other about
> the time an offender will actually serve in prison, the SRA tries
> to create a sentencing system that will require the offender
> actually to serve most of the sentence the judge imposes. *See*
> *Mistretta v. United States*, 488 U.S. 361, 367 (1989) ("[The SRA]
> makes all sentences basically determinate"). Second, the Act
> seeks greater fairness in sentencing through the creation of
> Guidelines that will increase the likelihood that two offenders
> who engage in roughly similar criminal behavior will receive
> roughly similar sentences. *See Barber, supra*, at 2505 (noting
> that Congress sought to achieve, in part, "increased sentencing
> uniformity").

*Setser v. United States*, 566 U.S. 231, 244 (2012) (Breyer, J., dissenting).

Thus, the Act calls for consistent sentencing, and provides extremely limited grounds for later alteration of a sentence. Specifically, Section 3582(c) prohibits a court from modifying a sentence of imprisonment except in three limited circumstances: (1) where extraordinary and compelling reasons warrant a reduction, § 3582(c)(1)(A); (2) where another statute or Federal Rule of Criminal Procedure 35 expressly permits a sentence modification, § 3582(c)(1)(B); or (3) where a defendant has been sentenced to a term of imprisonment based on a sentencing range that was subsequently lowered by the Commission and certain other requirements are met, § 3582(c)(2). *See also United States v. Washington*, 549 F.3d 905, 915-16 (3d Cir. 2008) (holding that a sentence may only be modified pursuant to Section 3582(c) or Rule 35, and a district court otherwise lacks jurisdiction to modify a previously imposed sentence; here, the district court vacated a sentence upon learning that the defendant had been prosecuted under a false name he provided, in order to conceal his full criminal history, and the Court of Appeals reversed this action as exceeding the court's jurisdiction). Under Section 3582(c), "[i]n the sentencing context, there is simply no such thing as a 'motion to reconsider' an otherwise final sentence." *United States v. Dotz*, 455 F.3d 644, 648 (6th Cir. 2006).

Accordingly, consistent with the statutory scheme, the grounds for compassionate release identified by the Commission are all based on

inherently individual circumstances – health, age, and family responsibilities – and, not surprisingly, nothing remotely comparable to the propriety of statutory penalties applied to thousands of offenders.

Indeed, the remedy sought by the defendant would mark a profound alteration of the sentencing scheme carefully designed by Congress. It would afford individual judges the authority to, in effect, exercise a parole power that Congress specifically acted in 1984 to abolish, or exercise a clemency function that the Constitution affords exclusively to the President. *See* U.S. Const., Art. II, § 2, cl. 1. A judge could, for instance, impose a mandatory sentence as dictated by Congress, and then after the judgment became final act to reduce it, upon a declaration that imposition of the sentence in the particular case is "extraordinary" and unwarranted. This power would inevitably result in varying determinations by different courts, demolishing the certainty and consistency in sentencing that Congress required through passage of the Sentencing Reform Act. The suggested course would also undermine the finality of sentences, a concept "which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989).

To be sure, Congress could have authorized sentence reductions for defendants sentenced under prior versions of Section 924(c). In Section 404 of

the First Step Act, for example, Congress authorized full retroactive application of Sections 2 and 3 of the Fair Sentencing Act of 2010. But Congress decided not to extend the benefit of Section 403 of the First Step Act to defendants like the defendant, and it did not authorize use of Section 3582(c)(1)(A) to accomplish the same result. Instead, as before the First Step Act, Congress directed the Sentencing Commission to identify extraordinary circumstances that may warrant compassionate release. The Commission has set forth a sensible set of reasons, focused on individual circumstances, that do not contemplate resentencing based on a reassessment of the appropriate criminal penalty for the original criminal conduct.[2]

The suggested action here, to effectively countermand Congress' determination regarding retroactive application of the First Step Act, also parts from the basic rule that Congress, not the executive or judicial branches, defines sentences. Article I, Section 8 of the United States Constitution charges Congress with setting penalties for criminal offenses. *See Mistretta v. United States*, 488 U.S. 361, 363 (1989) (citing *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 94 (1820) (identifying "the plain principle that the power of punishment is vested in the legislative, not in the

---

[2] Likewise, it would be inappropriate for BOP, in the exercise of its authority to recommend compassionate release, to assume for itself the authority to reject lengthy sentences in individual cases based on disagreement with Congressional penalty enactments.

judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.")). Congress' authority in this regard extends to identifying the relative seriousness of various offenses, and "in evaluating the magnitude of the harm caused by" an offense, courts "defer to the findings made by Congress." *United States v. MacEwan*, 445 F.3d 237, 249 (3d Cir. 2006). "Whatever views may be entertained regarding severity of punishment . . . these are peculiarly questions of legislative policy." *Dorszynski v. United States*, 418 U.S. 424, 442 (1974) (ellipsis in original, quoting *Gore v. United States*, 357 U.S. 386, 393 (1958)).

Under still-controlling law, Congress has tasked the Sentencing Commission, not the courts, with determining what constitutes an "extraordinary and compelling reason" that can justify compassionate release. In a detailed and still-controlling policy statement, the Commission has set forth four categories of reasons that qualify. The reasons that the defendant relies upon in his motion do not align with any of the reasons given by the Commission. Because of this, he is statutorily ineligible for compassionate release.

### 3. The District Court Decisions Supporting the Defendant's Position Are Unpersuasive.

A number of district courts have agreed with the proposition that a court may now itself define the circumstances that permit compassionate

release, unfettered by the Commission's policy statement, but most present limited reasoning, and none addresses the extensive arguments presented here concerning the clear statutory language. Indeed, none recognizes or addresses the significance of the Supreme Court's *Dillon* decision in addressing this issue. *See, e.g.*, *United States v. Rodriguez*, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019); *United States v. Brown*, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. O'Bryan*, 2020 WL 869475 (D. Kan. Feb. 21, 2020); *United States v. Perez*, 2020 WL 1180719 (D. Kan. Mar. 11, 2020);[3] *United States v. Bucci*, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019); *United States v. Beck*, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019); *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020); *United States v. Cantu*, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020); *United States v. Redd*, 2020 WL 1248493 (E.D. Va. Mar. 16, 2020).

Other courts disagree, and concur with the government's view that the policy statement remains controlling. *See, e.g.*, *United States v. Mollica*, 2020

---

[3] *Perez* granted compassionate release both because the sentence was imposed under mandatory guidelines, and because the defendant meets the BOP criteria for relief for older inmates. In that case, the government stated only that the availability of relief was unsettled, while acknowledging that the "majority" view permitted the court to replace BOP in determining eligibility for compassionate release. The government did not present the thorough arguments offered here. Indeed, in most of the adverse decisions cited here, the government regrettably did not present all of the arguments stated here.

WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020); *United States v. Lynn*, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019); *United States v. Shields*, 2019 WL 2359231, at *4 (N.D. Cal. June 4, 2019); *United States v. Willingham*, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (disagreeing with decisions cited above, stating, "[t]hese cases, however, rest upon a faulty premise that the First Step Act somehow rendered the Sentencing Commission's policy statement an inappropriate expression of policy. This interpretation, and it appears to be an interpretation gleaned primarily from the salutary purpose expressed in the title of Section 603(b) of the First Step Act, contravenes express Congressional intent that the Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision"); *United States v. McGraw*, 2019 WL 2059488, *2 (S.D. Ind. 2019); *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires."); *United States v. Schmitt*, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020); *United States v. Washington*, 2019 WL 6220984, at *2 (E.D. Ky. Nov. 21, 2019); *United States v. Fox*, 2019

WL 3046086, at *3 (D. Me. July 11, 2019);[4] *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *United States v. Ebbers*, 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Overcash*, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019); *United States v. Hunter*, 2020 U.S. Dist. LEXIS 4305, at *5 (S.D. Ohio Jan. 9, 2020); *United States v. York*, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019); *United States v. Pitts*, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020) (refusing to commit an inappropriate "end run" around the non-retroactivity of Section 403 of the First Step Act, that amended 924(c) penalties). *Cf. United States v. Rivernider*, 2019 WL 3816671, at *3 (D. Conn. Aug. 14, 2019) ("In support of his claim under subdivision (D), the defendant makes a variety of assertions: his convictions and sentence are unlawful, he has served substantially more time in prison than he expected to serve when he pleaded guilty, he has been mistreated

---

[4] In *Fox*, the district court stated, "I agree with the courts that have said that the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change." 2019 WL 3046086, at *3. But the court then evaluated, and denied, the defendant's request on the basis of the considerations outlined in the policy statement, declining to consider the defendant's argument that changes in sentencing law and disparate treatment of other offenders presented extraordinary circumstances warranting relief. The court reasoned: "I conclude that those other extraordinary and compelling reasons should be comparable or analogous to what the Commission has already articulated as criteria for compassionate release. Despite Fox's understandable frustration over the unfairness he perceives in others getting sentencing benefits while he does not, the compassionate release provision is not an end-run around the Commission's authority to make certain Guideline changes not retroactive or Congress's decision to reduce sentences for some crimes but not others, or a means to redress perceived disparities with other sentenced defendants." *Id.* In other words, this case as well stands in opposition to the relief sought here.

and treated unfairly, and his minor children are suffering in his absence.
None of these factors is comparable to the Commission's criteria for
compassionate release.").

The first appellate decision on the issue agreed with the government's
view. In *United States v. Saldana*, -- F. App'x --, 2020 WL 1486892 (10th Cir.
Mar. 26, 2020) (not precedential), the panel held that compassionate release
is not available based on a change in sentencing law that would produce a
lower sentence today. The panel stated: "neither the § 1B1.13 commentary
nor BOP Program Statement 5050.50 identify post-sentencing developments
in case law as an 'extraordinary and compelling reason' warranting a
sentence reduction." Accordingly, the court held, a court lacks jurisdiction to
grant compassionate release on this basis.

In many of the cases in which a district court has articulated a power to
consider circumstances not identified by the Sentencing Commission, the
relief granted was in fact based on the traditional considerations of health,
age, and family circumstances that are identified by the Commission as
possible extraordinary circumstances. *See Cantu*, 2019 WL 2498923, at *1
(identifying the defendant as "elderly," and the government agreed that home
confinement was warranted); *Beck*, 2019 WL 2716505 (relief granted on the
basis of invasive cancer and BOP's purported history of indifference to the
defendant's medical condition); *Rodriguez*, 2019 WL 6311388 (defendant's

- 27 -

claim was exclusively based on medical condition, and the court upon analysis denied the motion); *Bucci*, 2019 WL 5075964 (defendant is sole available caregiver for ailing mother); *Schmitt*, 2020 WL 96904 (defendant suffered from metastatic breast cancer); *United States v. Cantu-Rivera*, 2019 WL 2578272 (S.D. Tex. June 24, 2019) (although the court suggested that the policy statement is not binding, its grant of release was nonetheless based on the defendant's advanced age and significant health issues, as well as the fact that he would receive a lower sentence under current law).

However, many courts in recent months have granted the relief the defendant seeks here, and reduced sentences based on pre-First Step Act 924(c) charges. Besides the decisions to that effect cited above in *O'Bryan*, 2020 WL 869475; *Urkevich*, 2019 WL 6037391; *Young*, 2020 WL 1047815; *Maumau*, 2020 WL 806121; and *Redd*, 2020 WL 1248493, other such decisions include *United States v. Wade*, 2020 WL 1864906 (C.D. Cal. Apr. 13, 2020); *United States v. Chan*, 2020 WL 1527895 (N.D. Cal. Mar. 31, 2020) (indicative ruling pending completion of appeal); *United States v. Almontes*, 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Decator*, 2020 WL 1676219 (D. Md. Apr. 6, 2020); *United States v. Haynes*, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, 2020 WL 1908911, at *7 (W.D.N.Y. Apr. 20, 2020); and *United States v. McPherson*, 2020 WL 1862596

(W.D. Wash. Apr. 14, 2020).[5] These recent decisions mostly rely on earlier ones to justify relief, without tackling the significant and indeed insuperable barriers explained by the government to this Court.

To the extent that courts have perceived expanded judicial authority in considering motions for compassionate release, those decisions are without legal basis. *Cantu* presents one of the more extensive discussions, and is most frequently cited. It devotes most of the pertinent discussion, 2019 WL 2498923, at *3-5, to the indisputable proposition that the portion of the guideline commentary that conditions relief on a BOP motion, consistent with the earlier statute, is no longer operative, as a policy statement may not conflict with a governing statute.[6] From that premise, however, *Cantu*

---

[5]  *Young* held that relief was warranted in light of the change in 924(c) penalties, in combination with the defendant's medical condition and rehabilitation, even though his medical condition and rehabilitation by themselves would not warrant relief. 2020 WL 1047815.

In *Brown,* 2019 WL 4942051, the Iowa district court suggested that relief may be afforded based on the length of 924(c) sentences, but denied the request, as the defendant had not yet completed the sentence that would be imposed under current law; the court instead suggested that the Department of Justice support a request for executive commutation of the sentence.

[6]  Application note 4 of Section 1B1.13, which states the prior requirement of a BOP motion, has not been amended in light of the First Step Act, as the Commission currently lacks a quorum.

Application note 4 also encourages BOP to be liberal in filing such motions and states that a "court is in a unique position to determine whether the circumstances warrant a reduction." But this language does not empower a court to ignore the policy statement's substantive directives and adopt a freestanding power to declare what circumstances may

unjustifiably concludes "that when a defendant brings a motion for a sentence reduction under the amended [Section 3582(c)(1)(A)], the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief." *Id.* at *5.

In support, *Cantu* relies first on the proposition that Congress aimed to increase the award of compassionate release, and the fact that the title of Section 603(b) of the First Step Act is "Increasing the Use and Transparency of Compassionate Release." But as the court explained in its lengthy rejection of *Cantu* in *United States v. Lynn*, 2019 WL 3805349, at *3-4 (S.D. Ala. Aug. 13, 2019), there is much in the First Step Act that expands the availability of compassionate release, from the authorization of direct defense requests to a sentencing court, to provisions requiring notification and assistance to prisoners who may prepare requests.[7] Nothing in the Act, however, revises the explicit directives in Sections 994(t) and 3582(c)(1)(A) requiring

---

justify a sentence reduction. To the contrary, the note restates the court's obligation to adhere to consideration of the circumstances identified by the Commission.

[7] Besides allowing direct defense motions to the court, removing BOP as the gatekeeper, the First Step Act added subsection (d) to Section 3582, imposing enhanced requirements on BOP to notify prisoners of their right to seek compassionate release, with particular requirements (including mandates that BOP assist certain prisoners in preparing motions) where the inmate is terminally ill or suffers from a physical or mental impairment limiting the ability to prepare a motion. Additionally, the First Step Act added subsection (e), which requires a report by BOP to Congress in three years regarding the consideration of compassionate release motions.

compliance with the Sentencing Commission's policy statement. And as *Lynn* correctly concluded, "[i]f the policy statement needs tweaking in light of Section 603(b), that tweaking must be accomplished by the Commission, not by the courts." 2019 WL 3805349, at *4; *see id.* at *4 n.5 (noting it is not "easy to believe that Congress, which plainly desired the Commission to pour content into 'extraordinary and compelling reasons,' intended to eliminate that content by allowing defendants to move for compassionate release.'").

Next, *Cantu* relies on application note 1(D), which authorizes a reduction if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." 2019 WL 2498923, at *4-5. Because the BOP is no longer the "sole determiner of what constitutes an extraordinary and compelling reason," *Cantu* suggests, application note 1(D) "is not applicable when a defendant requests relief under § 3582(c)(1)(A)," and the district court, rather than the BOP, now may identify extraordinary and compelling reasons warranting a sentence reduction other than those set forth elsewhere in the policy statement. *Id.* Neither conclusion follows. First, even where a defendant moves for compassionate release, it remains sensible to permit BOP to use its expertise to identify additional extraordinary circumstances warranting compassionate release, whether specific to the defendant or

applicable generally, as set forth in the program statement. And second, even
if application note 1(D) does not apply where a defendant moves for
compassionate release, *Cantu* does not explain how that note or any other
portion of Section 1B1.13 grants courts unfettered authority to determine
what constitutes an extraordinary and compelling reason untethered to those
set forth elsewhere in the policy statement. In other words, even after the
First Step Act, Congress has "left the task of fleshing out the universe of
extraordinary and compelling reasons to the Commission, not the judiciary.
The Court is not freed by congressional silence but bound by Commission
policy statements that Congress has expressly required the courts to follow."
*Lynn*, 2019 WL 3805349, at *5. *See United States v. Ebbers*, 2020 WL 91399,
*4 (S.D.N.Y. Jan. 8, 2020) ("Congress in fact only expanded access to the
courts; it did not change the standard.").

In granting relief in *United States v. Maumau*, 2020 WL 806121 (D.
Utah Feb. 18, 2020), the court took a different tack, stating:

> The court briefly notes that, in reaching this conclusion, its
> reasoning is slightly different from some of the other district
> courts cited above. A few of those cases frame the First Step Act
> as shifting discretion from the Bureau of Prisons Director to the
> district courts. *See, e.g., Fox*, 2019 WL 3046086 at *3 ("I treat the
> previous BOP discretion to identify other extraordinary and
> compelling reasons as assigned now to the courts."); *Brown*, 2019
> WL 4942051 at *4 (same). But in this court's view, the district
> courts have always had the discretion to determine what counts
> as compelling and extraordinary. The courts have never been a
> rubber stamp for compassionate release decisions made by the

> Bureau of Prisons. . . . The key change made by the First Step Act is not a redistribution of discretion, but the removal of the Director's role as a gatekeeper.

*Maumau*, 2020 WL 806121, at *4 n.5.

But *Maumau*, like all the decisions in agreement with it, entirely ignores the statutory command that, when exercising the discretion it possesses, a district court may only grant a reduction that "is consistent with applicable policy statements issued by the Sentencing Commission." *Maumau* never addresses that provision, or the Supreme Court's interpretation of such language in *Dillon*. It is because of that provision that a court cannot grant relief based solely on disagreement with the length of a sentence, or based on application of an otherwise non-retroactive change in sentencing law, as the Sentencing Commission has not authorized any reduction on such bases.[8]

Finally, *United States v. Rodriguez*, 2020 WL 1627331 (E.D. Pa. Apr. 1, 2020), posited that there is no "applicable" policy statement to obey, because the removal of the requirement of a BOP motion rendered the current policy statement obsolete. *Id.* at *4. But whatever the status of the policy statement, the fact remains that Congress explicitly directed the Sentencing Commission, not courts, to "describe what should be considered extraordinary

---

[8] Rather, these adverse decisions not only ignore *Dillon* completely, but also, in several cases, expressly state, erroneously, that this particular guideline statement is advisory due to *Booker. See, e.g., Haynes*, 2020 WL 1941478 at *12 ("*Booker* establishes that the Guidelines and their commentary are unquestionably not binding on the Courts.").

and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The First Step Act did not modify that exclusive delegation of authority, under which the Commission alone may define extraordinary and compelling reasons in the first instance. And in any event, the present application note is not obsolete; the definition of "extraordinary and compelling reasons" is not altered in any respect by the removal of the BOP motion requirement, and remains applicable.

*Rodriguez* further opined that denying courts the opportunity to define qualifying circumstances would effectively narrow the available bases for relief in cases in which BOP never assesses an inmate's request for compassionate release. 2020 WL 1627331, at *5. The court stated that because paragraph (D) of the application note allows BOP to define additional circumstances for compassionate release, an inmate would be prejudiced if BOP did not promptly assess the inmate's request and a court could not itself identify novel grounds for relief. *Id.* But as explained above, BOP has already issued a program statement identifying the circumstances it considers extraordinary, satisfying the purpose of paragraph (D). Nothing prevents a court, after the 30-day review period has ended, from granting compassionate release on the basis of grounds described in either the guideline policy

statement or in the BOP program statement, which ensures that all inmates are subject to the same criteria.[9]

As stated, the defendant's suggestion could severely undermine the plain goals of the Sentencing Reform Act to reduce disparity in sentencing and to afford offenders, victims, and the public a clear understanding at the time of sentencing of the actual punishment imposed. It would remove certainty in sentencing, allowing individual judges years after the fact to revise terms based on their then-determined views of the reasonableness of sentencing law. Whatever the merit of such a plan, it may only be instituted by Congress.

And indeed, the decisions we criticize here are ushering in a new era, in which courts are incorrectly assuming a sweeping parole power that Congress never declared, certainly not in the compassionate release statute. In *Marks*,

---

[9] Moreover, the discussion in *Rodriguez* is dictum. The defendant sought relief both on the basis of the length of his sentence and his vulnerability to COVID-19. Although Rodriguez argued that the court could grant compassionate release based on his assessment of the different way his case would be charged and sentenced under current law, the court did not accept this basis for relief. *Id.* at *10 n.32 ("I do not find the purported changes in Department of Justice (DOJ) policy to be extraordinary and compelling reasons. Whether or not this could be an appropriate basis for compassionate release, Mr. Rodriguez has not demonstrated that he would be charged differently today."). As to Rodriguez's medical claim for relief, the government never suggested that, under the policy statement, exposure to COVID-19 of a vulnerable inmate could not be a basis for compassionate release. To the contrary, in numerous cases currently being litigated, the government acknowledges that a chronic condition or characteristic that places a defendant at heightened risk of adverse outcomes based on COVID-19 may qualify as a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility." U.S.S.G. § 1B1.13.

for instance, the district court stated, "I recognize that the Court does not sit as a super parole board. The Court has no inherent power to grant clemency to previously sentenced defendants, whether based on their good conduct in prison or for any other reasons, no matter how compelling those reasons might seem." *United States v. Marks*, 2020 WL 1908911, at *16 (W.D.N.Y. Apr. 20, 2020). The court then proceeded to do exactly that, declaring that "Congress has expanded courts' powers to modify defendants' sentences." That expansion is not expressed anywhere in the First Step Act, which, as relevant here, merely authorized inmates to petition for compassionate release directly, subject to the terms set by the Sentencing Commission.

Other recent cases, outside the context of stacked 924(c) sentences, illustrate what is at stake. In *United States v. Millan*, 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020), the court relied on this newly declared authority under the compassionate release statute, and released a defendant after he served 28 years of a life sentence for drug and firearm crimes. The court summarized: "Mr. Millan's extraordinary rehabilitation, together with his remorse and contrition, his conduct as model prisoner and man of extraordinary character, his leadership in the religious community at FCI Fairton, his dedication to work with at-risk youth and suicide prevention, and the support of BOP staff at FCI Fairton, including their opinion that if released, Mr. Millan would be a productive member of society and no danger

to others, and the sentencing disparity that would result from further incarceration all constitute extraordinary and compelling reasons justifying a reduction in sentence." *Id.* at *15. In other words, just what the defendant seeks in this case: a return of parole and indeterminate sentencing that was abolished in the Sentencing Reform Act.

Likewise, in *United States v. Reyes*, 2020 WL 1663129 (N.D. Ill. Apr. 3, 2020), the court reduced a 300-month sentence imposed for robbery and firearm offenses, to time served of 180 months, based on factors not addressed in the policy statement: the length of the sentence, the defendant's rehabilitation, and the fact that he can assist with the care of an aunt who is suffering from cancer (but is not one of the relations described in the policy statement as allowing compassionate release based on family circumstances). This court as well relied on the incorrect notion that a court itself may identify "extraordinary and compelling circumstances" and proceed to alter a long-final sentence. We request that this Court not follow these mistaken rulings.

## 4. The Defendant Should Not Receive Relief.

Finally, even if the defendant were statutorily eligible for consideration of compassionate release on the basis of a change in sentencing law (which he is not), such relief is always discretionary. For the reasons explained above, this Court should exercise its discretion to deny it.

## V.    Conclusion

Accordingly, the government respectfully requests that the defendant's

motion be denied.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY


BY:    *s/Timothy A. Bass*
         Timothy A. Bass, Bar No. MO 45344
         Assistant United States Attorney
         318 South Sixth Street
         Springfield, IL 62701
         Phone: (217) 492-4450
         tim.bass@usdoj.gov

- 38 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 21, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Counsel of Record

*s/Timothy A. Bass*
Timothy A. Bass, Bar No. MO 45344
Assistant United States Attorney
318 South Sixth Street
Springfield, IL 62701
Phone: (217) 492-4450
tim.bass@usdoj.gov
