E-FILED
Thursday, 08 October, 2020  09:59:13 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-20004** |
| | ) | |
| **ROSS THACKER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant Thacker's Motions for Compassionate Release (Docs. 240 and 244) and the Government's Response (Doc. 248). For the reasons set forth below, Defendant's Motions are DENIED.

### BACKGROUND

On April 19, 2004, Defendant Thacker appeared for a jury trial. On April 22, 2004, the jury returned a verdict of guilty on Counts 5 and 6 of the Superseding Indictment and a mistrial was declared on Counts 1 and 2. On May 3, 2004, Defendant was retried and found guilty of Counts 1 and 2. In sum, Defendant was found guilty of two counts of robbery and two counts of carrying a firearm in furtherance of a crime of violence. (Doc. 187). On March 9, 2005, Defendant was sentenced to a total of 400 months of imprisonment and five years of supervised release. (Doc. 187). Defendant is currently housed at The Federal Correctional Institution, Gilmer in West Virginia (FCI Gilmer). (Doc. 244). His projected release date is December 5, 2033. (*Id.*)

On August 25, 2020, Defendant filed a *pro se* Motion for Compassionate Release. (Doc. 240). The Court appointed the Federal Public Defender's Office to represent him, and on September 8, 2020, appointed counsel filed an Amended Motion for Compassionate Release on

1

his behalf. (Doc. 244). On September 21, 2020, the Government filed its Response in opposition to compassionate release. (Doc. 248). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons (BOP) file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

The compassionate release statute directs the Court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1).

If an inmate has a chronic medical condition identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming severely ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." A chronic condition reasonably may be found to be "serious" and to "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I).

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See, e.g., United States v. Melgarejo*, 2020 WL 2395982 at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is

facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

Finally, a court must deny a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

DISCUSSION

**A.  Eligibility for compassionate release related to Defendant's health.**

The parties appear to agree that Defendant has exhausted his BOP administrative remedies, and the Government focuses its response on the merits on Defendant's claims. The Government agrees that Defendant, who is thirty-eight years old, has Type 2 diabetes, hypertension, and other medical issues that appear to be less relevant to COVID-19, including acute periodontists, hemorrhoids, and hyperlipidemia. The Government further agrees that diabetes increases Defendant's risk for severe illness and that hypertension might increase his risk for a severe infection. However, the Government argues that Defendant's conditions are treated with medication and his condition is overall stable. Accordingly, the Government argues that Defendant is not suffering from "a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care." U.S.S.G. § 1B1.13 comment n.1(A)(ii).

Further, in contrast to some of the other BOP facilities where COVID-19 outbreaks are uncontrolled, there are currently only three inmates and no staff members who are positive for COVID-19 at FCI Gilmer where Defendant is housed. (https://www.bop.gov/coronavirus/ last visited on 10/7/2020). As previously stated, "[t]he mere presence of COVID-19 in a particular prison cannot justify compassionate release – if it could, every inmate in that prison could obtain release." *See e.g., United States v. Melgarejo*, 2020 WL 2395982 (C.D. Ill. May 12, 2020). Given

the fairly limited number of infections present at the facility, the Court believes the BOP's approach to containing the outbreak at this facility is adequate. Therefore, the Court finds Defendant has failed to meet his burden of establishing extraordinary and compelling circumstances justifying his release.

**B.   The amendment of 924(c) is not a basis to grant Defendant compassionate release.**

Defendant further argues that the Court should grant his Motion due to his unusually long sentence and a subsequent change to the law that would subject him to a much lower mandatory minimum sentence.  Defendant argues that Section 403 of the First Step Act, titled "Clarification of Section 924(c)" explains that Congress intended 18 U.S.C. § 924(c) to be a recidivist statute so that the enhanced 25-year minimum applies only when a § 924(c) conviction happens after a prior conviction has become final.  Here, Defendant was indicted for two § 924(c) crimes at the same time. When he was sentenced, he was subject to a 7-year mandatory minimum on one of his § 924(c) convictions and a 25-year mandatory minimum on the other because it was considered a second § 924(c) conviction. Defendant argues that today he would instead be subject to two 7-year mandatory minimum terms for brandishing a weapon, because the Court imposed a 25-year mandatory minimum even though his second conviction happened before he had a final conviction for a § 924(c) violation.

Defendant makes a variety of arguments that the Court has the power to determine whether Defendant's unusually long sentence and the subsequent change to the sentencing law qualify as an extraordinary and compelling reason to grant relief.  Defendant argues that the text of the statute and legislative history reveal that Congress intended to give courts additional to power to reduce sentences and expand the use of compassionate release. Defendant further asserts that by revising

4

the law regarding § 924(c), Congress was acknowledging that it had previously made a mistake and that the law was too draconian.

The current policy statement on compassionate release outlines four categories which constitute "extraordinary and compelling reasons" as a basis for compassionate release: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) "other reasons" as determined by the Director of the BOP. U.S.S.G. § 1B1.13. The Government describes the enumerated reasons as individualized reasons and argues that making a sentencing change retroactive is not the sort of individualized reason contemplated in the sentencing guidelines. Plaintiff argues that his sentence could fall under the "other reasons" category because the fact that he was subject to the more draconian sentencing guideline that is no longer applicable is unfair to him.

As the Government points out, the determination of the retroactivity of a statutory provision is made by Congress. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). It is generally presumed that a change to criminal penalties does not apply retroactively, unless Congress provides otherwise. *Id.* at 272; *see also Middleton v. City of Chicago,* 578 F.3d 655, 662 (7th Cir. 2009) ("a court should not apply a newly enacted statutory provision retroactively unless Congress has clearly mandated such an extension."). The controlling statute, 1 U.S.C. § 109, provides: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." Here, Congress stated its intent explicitly that "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the

offense has not been imposed as of such date of enactment." First Step Act § 403(b). Given that Defendant was sentenced before December 21, 2018, Section 403 does not apply in this case, and Defendant's sentence remains intact. The Court is not persuaded that the statute related to compassionate release can be used to avoid Congress's explicit language and find that this statute is retroactive for some defendants. Congress knows how to make a sentencing change retroactive; it did not do so here. This Court cannot read retroactivity into the guidelines or the statute without clear language indicating that it is appropriate for the Court to do so.

Additionally, the first appellate decision on a similar issue agreed with the Government's view. In *United States v. Saldana*, the Tenth Circuit held that compassionate release is not available based on a change in sentencing law that would produce a lower sentence today. *United States v. Saldana*, -- F. App'x --, 2020 WL 1486892 (10th Cir. Mar. 26, 2020). The Tenth Circuit stated: "neither the § 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." Accordingly, the Tenth Circuit held that courts lack jurisdiction to reduce a sentence on this basis.

While the Seventh Circuit has not directly addressed this issue, another judge from this district addressed a similar issue where the defendant would have faced a lower guideline sentence range because under *Johnson v. United States*, 576 U.S. 591 (2015), one of his predicate offenses would no longer qualify as a crime of violence such that he would be subject to the career offender guidelines. *United States v. Thomas,* No. 10-30046, 2020 WL 4917730, at *1 (C.D. Ill. Aug. 21, 2020). There, the court considered the fact that the defendant's sentence would likely be over had he not been subject to the career offender guidelines as one factor in considering Defendant's request for compassionate release. The court also considered the COVID-19 outbreak at the

6

defendant's institution, the defendant's lack of risk factors related to COVID-19, and that the defendant had little time remaining on his sentence. *Id*. The court still concluded that the defendant had not shown extraordinary and compelling circumstances to warrant compassionate release.

The Court acknowledges that other district courts are split on the issue of whether changes in the law that would result in a substantially lowered sentencing guideline range or a substantially lower mandatory minimum is an extraordinary and compelling justification for compassionate release. Indeed, some defendants were subject to mandatory minimums or guideline ranges that are decades longer than the current sentencing scheme would require. Some district courts find that result is so unfair that they believe it is an extraordinary and compelling reason to reduce defendants' sentences under the compassionate relief statute. *See e.g. United States v. Millan*, 2020 WL 1674058 (S.D.N.Y. Apr. 6, 2020); *United States v. Decator*, 2020 WL 1676219 (D. Md. Apr. 6, 2020*); United States v. Haynes*, 2020 WL 1941478 (E.D.N.Y. Apr. 22, 2020); *United States v. Marks*, 2020 WL 1908911, at *7 (W.D.N.Y. Apr. 20, 2020). These cases are not binding on this court, and many district courts agree that if Congress wished to empower the courts to reduce sentences on that basis, it needed to do so explicitly. *See e.g.*, *United States v. Neubert*, 2020 WL 1285624, at *3 (S.D. Ind. Mar. 17, 2020) ("a reduction under § 3582(c)(1)(A) is not warranted because the disparity between Mr. Neubert's actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.' Instead, it is what the plain language of § 403 [of the First Step Act] requires."); *United States v. Pitts*, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020) (refusing to commit an inappropriate "end-around" the non-retroactivity of Section 403 of the First Step Act, that amended 924(c) penalties).

Because Congress has indicated that the relevant statute is not retroactive and because the compassionate relief guidelines focus on individualized health and family circumstances, this

Court is unable to conclude that Defendant has presented an "extraordinary and compelling" a reason to qualify him for compassionate release.

### C. The Court is unable to conclude that Defendant would not be a danger to his community.

In any event, Defendant has not demonstrated that he would not be a danger to his community. Before releasing a defendant, the Court is required find that a defendant is not a danger to the community. U.S.S.G § 1B1.13. Based on Defendant's criminal history and disciplinary record, the Court is unable to do so here. He is currently imprisoned for a series of robberies and as the Seventh Circuit observed, during one of the robberies "one of the defendants pistol-whipped an employee." *United States v. Thacker*, 2006 WL 3374174, at *1 (7th Cir. Nov. 11, 2006). Despite being only twenty-two years old at the time of sentencing, Defendant had 10 criminal history points from prior convictions for residential burglary, burglary, and armed robbery. (Doc. 187 at ¶¶ 50–52). He committed the instant offense while on state parole and within two years of release from state imprisonment. (*Id*. at ¶ 53). While imprisoned, Defendant has had numerous disciplinary infractions, including four infractions for assaulting without serious injury, two infractions for being absent from an assignment, possessing drugs or alcohol, fighting with another person, phone abuse, and possessing intoxicants. (Doc. 248 at 3). His most recent infraction was from 2019 for refusing to obey an order, and his most recent fighting charge was from 2014. (Doc. 244 at 16). The BOP has also assessed Defendant as a high risk of recidivism. (*Id*.). While Defendant argues that he has worked hard to prepare himself for life after release by taking dozens of classes, that is not enough in light of his long history of violent behavior and the BOP's assessment that he is at high risk of recidivism.

8

## CONCLUSION

For the reasons set forth above, it is ORDERED that Defendant's Motions [240] and [244] are DENIED.

ENTERED this 8th day of October, 2020.

___/s/ Michael M. Mihm_____
Michael M. Mihm
United States District Judge
